Megan Pierce (SBN 314044)
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)
*megan@loevy.com*

Counsel for Plaintiffs and the proposed classes

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA VESTRAND, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>CLEARVIEW AI, INC., HOAN TON-THAT, RICHARD SCHWARTZ, ROCKY MOUNTAIN DATA ANALYTICS LLC, THOMAS MULCAIRE, AND MACY'S, INC.,<br><br>    Defendants. | No._____<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

LOEVY & LOEVY
Attorneys at Law

Plaintiff Andrea Vestrand ("Plaintiff"), individually and on behalf of all others similarly situated ("Plaintiff Class Members"), brings this Consolidated Class Action Complaint against the following: (a) Clearview AI, Inc. ("Clearview"); (b) Hoan Ton-That; (c) Richard Schwartz; (d) Rocky Mountain Data Analytics LLC ("Rocky Mountain"); (e) Thomas Mulcaire; and (f) Macy's, Inc. ("Macy's"), individually and on behalf of a defendant class comprised of all other private, non-governmental entities similarly situated to Macy's (hereinafter, "Defendant Class Members") (all Defendants collectively "Defendants"). Plaintiff complains and alleges as follows based on personal knowledge as to herself, the investigation of her counsel, and information and belief as to all other matters, and demands a trial by jury.

## NATURE OF THE ACTION

1.     Without providing any notice and without obtaining any consent, Defendants Clearview, Ton-That and Schwartz (collectively, the "Clearview Defendants") covertly scraped three billion photographs of facial images from the internet – including facial images of millions of American residents and then used artificial intelligence algorithms to scan the face geometry of each individual depicted in the photographs in order to harvest the individuals' unique biometric identifiers[1] and

---

[1] As used herein, "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry," among others.

LOEVY & LOEVY
Attorneys at Law

corresponding biometric information [2] (collectively, "Biometrics"). Further, the Clearview Defendants created a searchable biometric database (the "Biometric Database") that contained the above-described Biometrics and allowed users of the Database to identify unknown individuals merely by uploading a photograph to the database.

2. The Clearview Defendants did not develop their technology out of a desire for a safer society. Rather, they developed their technology to invade the privacy of the American public for their own profit.

3. While the Clearview Defendants have touted their actions and the Biometric Database as being helpful to law enforcement and other government agencies, the Clearview Defendants have made their Biometric Database available to public and private entities and persons, alike. What the Clearview Defendants' technology really offers is a massive surveillance state. Anyone utilizing the technology could determine the identities of people as they walk down the street, attend a political rally or enjoy time in public with their families. One of Clearview's financial backers has conceded that Clearview may be laying the groundwork for a "dystopian future."

4. Accordingly, Plaintiff, on behalf of herself and similarly situated individuals, brings this action for damages and other legal and equitable remedies

---

[2] As used, "biometric information" is any information captured, converted, stored, or shared based on a person's biometric identifier used to identify an individual.

LOEVY & LOEVY
Attorneys at Law

resulting from the actions of the Clearview Defendants, Macy's and all other private entities similarly situated to Macy's, and the other Defendants for their unlawful creation and/or use of the Biometric Database consisting of the Biometrics of millions of American residents, including residents of California. As alleged below, Defendants' conduct violated, and continues to violate, a number of state statutory and constitutional rights, as well as common law rights, causing injury to Plaintiff and Plaintiff Class Members.

## PARTIES

5.     Plaintiff Andrea Vestrand is, and at relevant times has been, a resident of California, residing in the Central District of California.

6.     Defendant Clearview AI, Inc. is a private, for-profit Delaware corporation, headquartered in New York, New York (Defendant and its predecessors, hereinafter "Clearview"). Clearview markets its technology throughout the United States, including in California. Moreover, Clearview obtains the images that underlie its technology from millions of internet-based platforms and websites, including, on information and belief, based on the magnitude of platforms and websites involved, platforms and websites of California companies or companies that operate servers in California. Clearview's business and unlawful practices extend nationwide, and it has disclosed the Biometrics of unsuspecting individuals to its clients around the country. Clearview continues to engage in this conduct to this day.

LOEVY & LOEVY
Attorneys at Law

7.     Defendant Hoan Ton-That is a founder and the Chief Executive Officer of Clearview and an architect of its illegal scheme, as alleged herein. Ton-That's responsibilities at Clearview included, and continue to include, managing technology matters. At relevant times, Ton-That knew of, participated in, consented to, approved, authorized and directed the wrongful acts alleged in this Consolidated Class Action Complaint.

8.     Defendant Richard Schwartz is a founder and the President of Clearview and an architect of its illegal scheme. Schwartz's responsibilities at Clearview included, and continue to include, managing sales. Schwartz knew of, participated in, consented to, approved, authorized, and directed the wrongful acts alleged in this Consolidated Class Action Complaint.

9.     At relevant times, Defendant Thomas Mulcaire was an attorney licensed in California, Clearview's General Counsel and the Vice President of Defendant Rocky Mountain. Mulcaire provided Rocky Mountain's sole customer with his personal information in order to be paid directly for work performed by Rocky Mountain.

10.     Defendant Rocky Mountain Data Analytics LLC is a private, for-profit New Mexico limited liability company with its principal place of business in New Mexico. As alleged in more detail below, a unity of interest existed between Rocky Mountain, on the one hand, and Ton-That, Schwartz and Mulcaire on the other that caused the separate personalities of Rocky Mountain and Ton-That, Schwartz and

Mulcaire to no longer exist. Further, as alleged in more detail below, Clearview is legally responsible for the actions and conduct of Rocky Mountain.

11.    Defendant Macy's, Inc. is a Delaware corporation that does business throughout California, with ninety-three department stores in the state.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Plaintiff Class Members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of each of the Plaintiff Classes is a citizen of a state different from one of the Defendants.

13.    This Court has personal jurisdiction over the Clearview Defendants because their contacts with California are directly related to the conduct alleged herein. Among other things, the Clearview Defendants collected, obtained, distributed, and profited from the biometric data, identities, likenesses, and photographs of Plaintiff and Plaintiff Class Members, who are California residents, thereby invading their private domains within the State of California. The Clearview Defendants engaged in their conduct without obtaining consent from Plaintiff and Plaintiff Class Members, which they would have obtained in California had they sought it. As alleged in more detail below, at relevant times, a unity of interest existed between Clearview and its principals, Ton-That and Schwartz, that caused the separate personalities of Clearview and those

principals to no longer exist. Moreover, adherence to the fiction of a separate corporate existence would promote injustice and inequitable consequences.

14.    This Court has personal jurisdiction over Rocky Mountain because, as alleged in more detail below, a unity of interest existed between Rocky Mountain, on the one hand, and Ton-That, Schwartz and Mulcaire on the other that caused the separate personalities of Rocky Mountain and Ton-That, Schwartz and Mulcaire to no longer exist. As a result, Rocky Mountain had no corporate existence separate from that of Clearview and, therefore, engaged in the same conduct with respect to California as that alleged for the Clearview Defendants.

15.    This Court has personal jurisdiction over Mulcaire because he is a California-licensed attorney who acted as Clearview's General Counsel during the time Clearview engaged in the unlawful conduct alleged herein. Moreover, Mulcaire was the Vice President of Rocky Mountain, which as alleged in more detail below was a corporate shell of Clearview. Mulcaire's contacts with California were, thus, the same as those of the Clearview Defendants.

16.    The Court has personal jurisdiction over Macy's because its contacts with California are directly related to the conduct alleged herein. At relevant times, Macy's operated ninety-three retail stores in California. On information and belief, Macy's obtained access to the Biometric Database and the Biometrics contained therein in order to identify people whose images appeared in surveillance camera footage from Macy's

LOEVY & LOEVY
Attorneys at Law

retail stores, including its retail stores in California. Macy's utilized the Biometric Database over 6,000 times, each time uploading a probe image to the database to have the database search the Biometrics contained therein, including the Biometrics of millions of California residents, for a biometric match. On information and belief, based on the magnitude of the number of searches, Macy's uploaded one or more probe images from surveillance cameras located in California.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because, as alleged above, a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in California. Alternatively, venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendants.

## FACTUAL ALLEGATIONS

### Biometric Identifiers

18.    Every individual has unique features by which he or she can be identified using a set of standard quantitative measurements, commonly referred to as "biometric identifiers."

19.    For example, the shape of and distance between tiny ridges on each person's finger are unique, so measures of those features can be used to identify a specific individual as the person who made a fingerprint.

20. Each person also has a unique facial geometry composed of, among other measurements, distances between key facial landmarks and ratios between those distances.

21. Once a picture of a person's face is scanned and its biometric measurements are captured, computers can store that information and use it to identify that individual any other time that person's face appears on the internet, in a scanned picture or in footage from any of the billions of cameras that are constantly monitoring the public's daily lives.

22. Unlike fingerprints, facial biometrics are readily observable and, thus, present a grave and immediate danger to privacy, individual autonomy, and liberty.

***The Clearview Defendants' Unlawful Biometric Database***

23. The Clearview Defendants have collected, captured and obtained Biometrics from more than three billion images they covertly scraped from the internet – including, on information and belief, the Biometrics of Plaintiff and Plaintiff Class Members – which they have amassed into the searchable Biometric Database.

24. Additionally, the Clearview Defendants have distributed, disseminated, sold, traded, leased and otherwise profited from the Biometrics they unlawfully collected, captured and obtained.

25. To date, the Clearview Defendants have sold unfettered access to their vast Biometric Database to more than 7,000 individuals from approximately 2,000 law

enforcement and government agencies, including the Chicago Police Department and the Illinois Secretary of State.

26.    Moreover, the Clearview Defendants have sold unfettered access to the Biometric Database to more than 200 private companies, including Macy's and Defendant Class Members. Those private entities in turn frequently queried the Biometric Database for their own business purposes, including to identify particular individuals appearing in photographs or videos in their possession. Each time one of Clearview's private clients queried the Biometric Database, the Clearview Defendants' algorithms compared the facial geometry of the subject appearing in a chosen photograph or video against the facial geometry of each of the hundreds of millions of subjects appearing in the database, including the facial geometry of Plaintiff and Plaintiff Class Members. Thus, by obtaining access to and querying the Biometric Database, Macy's and Defendant Class Members necessarily obtained, accessed and used all of the Biometrics in that database, including the Biometrics of Plaintiff and Plaintiff Class Members.

27.    At relevant times, the Clearview Defendants failed to store and protect from disclosure the highly sensitive Biometrics in the Biometric Database: (a) using the reasonable standard of care within Clearview's industry; and (b) in a manner that was the same or more protective than the manner in which the Clearview Defendants stored and protected other confidential and sensitive information. Evidence of the Clearview

LOEVY & LOEVY
Attorneys at Law

Defendants' lax security practices includes the fact that Clearview's electronic systems were hacked on at least two occasions in 2020.

28.    According to public reports, in one instance, the hackers obtained Clearview's customer list. In the other instance, hackers obtained access to a "misconfigured server" that exposed Clearview's internal files, apps and source code to anyone on the internet. The misconfigured server allowed anyone to run Clearview's software application and access the Biometric Database that contained the sensitive Biometrics of millions of United States residents, including Plaintiff and Plaintiff Class Members.

### The Corporate Fictions

29.    At relevant times, a unity of interest existed between Clearview and its principals, Ton-That and Schwartz, that caused the separate personalities of Clearview and those principals to no longer exist. Moreover, adherence to the fiction of a separate corporate existence would promote injustice and inequitable consequences.

30.    From Clearview's inception, Ton-That and Schwartz undercapitalized Clearview so that Clearview could not fulfill its obligations – namely, its legal obligations. Ton-That's and Schwartz's undercapitalization was especially egregious given that, as alleged herein, they built Clearview around an inherently unlawful business model that exposed Clearview to substantial legal liability at all times. Ton-

**CLASS ACTION COMPLAINT**

LOEVY & LOEVY
Attorneys at Law

That's and Schwartz's failure to adequately capitalize Clearview rendered, and continues to render, Clearview a mere liability shield.

31.    Further, at relevant times, Clearview directed its customers to send payments to Schwartz's personal residence. Moreover, Schwartz paid for the servers and other costs necessary to carry out Clearview's unlawful scraping and biometric scanning operations.

32.    Additionally, Ton-That and Schwartz treated Clearview's Biometric Database as their own and transferred "ownership" of it as they saw fit. In or about September 2019, Rocky Mountain was organized and, shortly thereafter, contracted with the Illinois Secretary of State to provide the Secretary of State with access to the Biometric Database. Rocky Mountain represented that the Biometric Database was "its proprietary technology" and that Rocky Mountain was the "sole manufacturer and provider" of the Biometric Database. According to Rocky Mountain, "there is no other company that offers this product [the Biometric Database] and set of capabilities." On information and belief, based on Ton-That's and Schwartz's leadership positions within Clearview and the fact that they were responsible for the creation of the Biometric Database, Ton-That and Schwartz authorized and were directly involved in the creation of Rocky Mountain and responsible for allowing Rocky Mountain to sell access to the Biometric Database.

33.    Notably, at relevant times, a unity of interest existed between Rocky Mountain, on the one hand, and Ton-That, Schwartz and Mulcaire on the other that caused the separate personalities of Rocky Mountain and Ton-That, Schwartz and Mulcaire to no longer exist. Moreover, adherence to the fiction of a separate corporate existence would promote injustice and inequitable consequences.

34.    Rocky Mountain was, in essence, a corporate shell that Ton-That and Schwartz did not capitalize at all.

35.    Further, Ton-That, Schwartz and Mulcaire did not follow corporate formalities with respect to Rocky Mountain. For instance, Rocky Mountain's salesperson, in actuality, was a Clearview employee. On information and belief, Ton-That, Schwartz and Mulcaire authorized and directed that Clearview salesperson to double as a Rocky Mountain salesperson, all the while knowing that the salesperson would be paid for all of his work by Clearview. Further, on information and belief, Ton-That and Schwartz authorized Mulcaire to provide his personal information to the Illinois Secretary of State, knowing that by doing so the Illinois Secretary of State would make direct payment to him, not Rocky Mountain. Mulcaire, an attorney, ultimately provided his personal information to the Illinois Secretary of State, resulting in the Illinois Secretary of State submitting a voucher to the Illinois Comptroller authorizing payment to Mulcaire. The Illinois Comptroller ultimately issued a $5,000 payment to Mulcaire.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

36.     Based on the same facts alleged in the preceding paragraphs, Clearview, itself, is also liable for the acts of Rocky Mountain because: (a) it was Rocky Mountain's parent; and (b) had control over and was involved in Rocky Mountain's misconduct. As alleged, Rocky Mountain's misconduct can be traced to Clearview, its parent, through the conduct of Ton-That, Schwartz and Mulcaire who were directly responsible for Rocky Mountain's activities. Rocky Mountain's activities – which including collecting, obtaining, distributing, disseminating, selling, leasing and profiting from the Biometrics of Plaintiff and Plaintiff Class Members – resulted in Rocky Mountain violating the privacy rights of millions of American residents, including residents of California. At all times, the injuries caused by Rocky Mountain's conduct were foreseeable.

***Allegations Related to Plaintiff and Plaintiff Class Members***

37.     At relevant times, Plaintiff uploaded from California to various websites on the internet photographs taken in California and containing images of her face. In creating the Biometric Database, Clearview searched millions of websites on the internet for image files. On information and belief, Plaintiff's Biometrics are contained in the Biometric Database.

38.     After scraping photographs from the internet, the Clearview Defendants, singularly and/or in concert, performed facial geometric scans of the various faces in

the scraped photographs, including Plaintiff's and Plaintiff Class Members' faces, in order to collect, capture and obtain the Biometrics from those faces.

39.    Additionally, the Clearview Defendants distributed and disseminated the Biometrics of Plaintiff and Plaintiff Class Members to Rocky Mountain who, after obtaining the Biometrics, then redistributed and disseminated them to the Illinois Secretary of State.

40.    The Clearview Defendants also distributed and disseminated the Biometrics of Plaintiff and Plaintiff Class Members to Macy's and Defendant Class Members who, as alleged above, purchased access to the Biometric Database and then repeatedly obtained the Biometrics contained therein in connection with running biometric searches.

41.    Clearview, Rocky Mountain, Ton-That, Schwartz and Mulcaire profited from the Biometrics in the Biometric Database, including the Biometrics of Plaintiff and Plaintiff Class Members, by selling, leasing and trading them to thousands of governmental and private entities, as alleged herein.

42.    Macy's and Defendant Class Members also profited from the Biometrics in the Biometric Database, including the Biometrics of Plaintiff and Plaintiff Class Members, by using those Biometrics to prevent losses and/or improve the customer's experience.

43.     Defendants: (a) never informed Plaintiff or Plaintiff Class Members in writing or otherwise of the purpose for which they were collecting, capturing, obtaining, purchasing, disclosing, redisclosing and disseminating the Biometrics of Plaintiff and Plaintiff Class Members; and (b) never sought, nor received, a written release or other consent from Plaintiff or Plaintiff Class Members or the respective authorized representatives of Plaintiff or Plaintiff Class Members that allowed Defendants to collect, capture, obtain, purchase, disclose, redisclose and disseminate the Biometrics of Plaintiff and Plaintiff Class Members.

44.     Further, Plaintiff and Plaintiff Class Members never consented, agreed or gave permission – written or otherwise – to Defendants for the collection or storage of their unique Biometrics. Indeed, prior to the Biometric Database being publicized, Plaintiff and Plaintiff Class Members had no idea Defendants were ever in possession of their photographs.

45.     Likewise, Defendants never provided Plaintiff or Plaintiff Class Members with an opportunity to prohibit or prevent the collection, storage, use or dissemination of their unique Biometrics.

**The Injuries to and Damages of Plaintiff and Plaintiff Class Members**

46.     As alleged herein, as a result of Defendants' unlawful conduct, Plaintiff and Plaintiff Class Members have already sustained injuries and face many more imminent and certainly impending injuries, which injuries they will continue to suffer.

47.    Defendants' unlawful conduct has resulted in, among other things: (a) Plaintiff's and Plaintiff Class Members' unique Biometrics being collected, captured, obtained, purchased, disclosed, redisclosed and otherwise disseminated without the requisite notice having been given and without the requisite releases or consents having been obtained; and (b) Plaintiff and Plaintiff Class Members being deprived of control over their Biometrics.

48.    To this day, Plaintiff and Plaintiff Class Members do not know which, or how many, individuals or entities have received, obtained, purchased, received through trade, accessed, stored, disclosed, redisclosed or otherwise made use of Plaintiff's and Plaintiff Class Members' Biometrics, exposing them to the imminent and certainly impending injuries of identity theft, fraud, stalking, surveillance, social engineering and other invasions of privacy.[3]

49.    As a result of Defendants' misconduct, Plaintiff and Plaintiff Class Members have no recourse for the fact that their biologically unique information has been compromised. Moreover, Plaintiff and Plaintiff Class Members are likely to withdraw from biometric-facilitated transactions and other facially-mediated electronic participation.

---

[3] *Facial Recognition Tech: 10 Views on Risks and Rewards,*
https://www.forbes.com/sites/forbestechcouncil/2018/04/03/facial-recognition-tech-10-views-on-risks-and-rewards/#54d3e1716b3c (accessed on Mar. 15, 2021)

LOEVY & LOEVY
Attorneys at Law

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)-(3) and 23(c)(4) on behalf of herself and the following classes:

a.     **Nationwide Class**: All individuals in the United States of America whose Biometrics were or are contained in the Biometric Database.

b.     **California Subclass**: All individuals who reside or resided in the State of California whose Biometrics were or are contained in the Biometric Database.

The Nationwide Class and California Subclass are at times collectively referred to hereinafter as the "Plaintiff Classes."

51.     Excluded from the above-described Plaintiff Classes are: (a) Defendants; (b) any parent, affiliate or subsidiary of any Defendant; (c) any entity in which any Defendant has a controlling interest; (d) any of Defendants' officers or directors; and (e) any successor or assign of any Defendant. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

52.     Additionally, on behalf of herself and the members of the Plaintiff Classes, Plaintiff brings this action against a class of entities similarly situated to Macy's pursuant to Federal Rule of Civil Procedure 23(b)(2)-(3) and 23(c)(4), defined as follows:

**Clearview Client Class:** All non-governmental, private entities – including publicly-traded companies – who purchased access to, or otherwise obtained, the Biometric Database and then utilized the database to run biometric searches at a time when the Biometrics of Plaintiff and members of the Plaintiff Classes had already been captured, collected or obtained, and subsequently stored, by the Clearview Defendants.

53.     The Plaintiff Classes and the Clearview Client Class are at times collectively referred to hereinafter as the "Classes".

54.     Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

55.     **Numerosity:** Members of each of the Classes are so numerous that their individual joinder herein is impracticable. Upon information and belief, the members of the Plaintiff Classes number in the millions, and the number of members of the Clearview Client Class exceeds forty.  The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery and objective data. Members of the Classes may be notified of the pendency of this action by mail, electronic mail, internet postings, social media and/or publication.

56.     **Commonality and predominance:** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only

individual members.  Common legal and factual questions include, but are not limited to:

a.      Whether Defendants engaged in the wrongful conduct alleged herein;

b.      Whether Defendants and members of the Clearview Client Class captured, collected, obtained, accessed, created, stored, used, commercialized, disseminated, disclosed or redisclosed the Biometrics of Plaintiff and members of the Plaintiff Classes ;

c.      Whether the actions of Defendants and members of the Clearview Client Class violated state statutory, federal statutory and common law;

d.      Whether Defendants and members of the Clearview Client Class properly informed Plaintiff and members of the Plaintiff Classes that they were collecting, capturing, obtaining, creating, accessing, storing, using, commercializing, disseminating, disclosing and redisclosing their Biometrics;

e.      Whether Defendants and members of the Clearview Client Class obtained signed written releases or any other form or consent from Plaintiff or members of the Plaintiff Classes to engage in the practices alleged herein;

**CLASS ACTION COMPLAINT**

f.     Whether Defendants and members of the Clearview Client Class used the Biometrics of Plaintiff and members of the Plaintiff Classes to identify them;

g.     Whether Defendants and members of the Clearview Client Class acted negligently, recklessly or intentionally in, directly or indirectly, scraping individuals' photographs from the internet and/or using them to identify individuals based upon facial geometry;

h.     Whether Defendants and members of the Clearview Client Class should be enjoined from continuing their practices;

i.     Whether Defendants and members of the Clearview Client Class failed to provide notice that they were, directly or indirectly, scraping individuals' photographs from the internet and/or using them to identify individuals based upon facial geometry;

j.     Whether Defendants and members of the Clearview Client Class failed to provide notice that they were collecting, capturing, obtaining, accessing, using, storing and disseminating individuals' images, facial geometry and Biometrics;

Case 2:21-cv-04360   Document 1   Filed 05/25/21   Page 22 of 42   Page ID #:22

k.   Whether Defendants and members of the Clearview Client Class provided any mechanism for members of the Plaintiff Classes to consent to their practices;

l.   Whether Macy's and members of the Clearview Client Class purchased or otherwise obtained access to the Biometric Database; and

m.   Whether Macy's and members of the Clearview Client Class collected, purchased, received through trade or otherwise obtained the Biometrics of Plaintiff and members of the Plaintiff Classes.

57.   **Typicality:** Plaintiff's claims are typical of the claims of members of the Plaintiff Classes because Plaintiff and all members of the proposed Plaintiff Classes have suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interests to advance adverse to the interests of the other members of the proposed Plaintiff Classes. Similarly, the defenses of Macy's are typical of the defenses of members of the Clearview Client Class because Macy's and all members of the proposed Clearview Client Class have engaged in similar conduct and injured Plaintiff and members of the Plaintiff Classes in similar ways. Plaintiff is unaware of any interests of Macy's that are adverse to the interests of the other members of the Proposed Clearview Client Class.

58.   **Adequacy:** Plaintiff is an adequate representative of the Plaintiff Classes because her interests do not conflict with the interests of the members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the members of the Plaintiff Classes will be fairly and adequately protected by Plaintiff and her counsel. Similarly, Macy's is an adequate representative of the Clearview Client Class because its interests do not conflict with the interests of the members of the Clearview Client Class. Further, Plaintiff anticipates that Macy's will retain competent and experienced counsel who will defend this action vigorously. The interests of the members of the Clearview Client Class will be fairy and adequately protected by Macy's and its counsel.

59.   **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims and defenses of the members of the Plaintiff Classes and the Clearview Client Class. Each individual member of the Plaintiff Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' and the Clearview Client Class's liability. Further, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In

**CLASS ACTION COMPLAINT**

contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court on the issue of the liability of Defendants and members of the Clearview Client Class. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

60.     In the alternative, the proposed classes may be certified because:

a.     The prosecution and defense of separate actions by each individual member of the proposed Classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

b.     The prosecution and defense of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members or which would substantially impair their ability to protect their interests; and

c.     Defendants acted or refused to act on grounds generally applicable to the proposed Classes, thereby making final and injunctive relief appropriate with respect to members of the proposed Classes.

61.     Pursuant to Rule 23(c)(4), particular issues are appropriate for certification – namely the issues described in paragraph 56 above, because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

## COUNT ONE
### VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.*
### (By Plaintiff, on Behalf of Herself and Members of the California Subclass, Against Defendants and Members of the Clearview Client Class)

62.     Plaintiff Vestrand restates and realleges paragraphs 1 through 61 of this Class Action Complaint as though fully set forth herein.

63.     California's Unfair Competition Law (the "UCL") prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

64.     Defendants engaged in unlawful and unfair business acts and practices within the meaning of the UCL.

65.     Defendants have engaged in the following unlawful and unfair business acts and practices:

    a.     Failing to comply with § 1798.100(b) of the California Consumer Privacy Act ("CCPA"), as alleged herein;

    b.     Commercial Misappropriation under Cal. Civ. Code § 3344(a), as alleged below;

LOEVY & LOEVY
Attorneys at Law

c.    Invasion of privacy under the California Constitution, Art. I, § 1, as alleged below;

d.    Violation of California's common law right of publicity, as alleged below;

e.    Failing to provide adequate data security of the data they have collected, as alleged above; and

f.    Omitting, suppressing and concealing that they did not comply with common law and statutory duties pertaining to the personal information of Plaintiff and members of the California Subclass, including duties imposed by California Constitution, Art. I, § I; the CCPA, Cal. Civ. Code § 1798.100(b); and Cal. Civ. Code § 3344(a).

66.    With respect to Defendants' violations of the CCPA, pursuant to Cal. Civ. Code § 1798.100(b), a business: (a) "that collects a consumer's personal information shall, at or before the point of collection, inform customers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used"; and (b) "shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." Cal. Civ. Code § 1798.100(b).

LOEVY & LOEVY
Attorneys at Law

67.    Section 1798.140(o)(1) defines "personal information" as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code § 1798.140(o)(1). Personal information includes, but is not limited to, "[b]iometric information." Cal. Civ. Code § 1798.140(o)(1)(E). "'Biometric information' means an individual's physiological, biological, or behavioral characteristics . . . that can be used, singly or in combination with each other or with other identifying data, to establish individual identity." Cal. Civ. Code § 1798.140(b). "'Biometric information' includes, but is not limited to, imagery of the . . . face . . . from which an identifier template, such as a faceprint . . . can be extracted . . . ." *Id.*

68.    Plaintiff and members of the California Subclass are consumers under the CCPA. *See* Cal. Civ. Code § 1798.140(g).

69.    Defendants Clearview, Rocky Mountain and Macy's and members of the Clearview Client Class are businesses under  the CCPA. *See* Cal. Civ. Code § 1798.140(c).

70.    As alleged herein, in violation of the CCPA, Defendants Clearview, Rocky Mountain and Macy's and members of the Clearview Client Class collected the personal information of Plaintiff and members of the California Subclass but failed to provide Plaintiff and members of the California Subclass with the information required by the CCPA, namely Clearview, Rocky Mountain, Macy's and members of the

Clearview Client Class failed to accurately inform Plaintiff and members of the California Subclass as to the categories of personal information to be collected and the purposes for which the categories of personal information were to be used.

71.     As alleged herein, Defendants Clearview, Rocky Mountain and Macy's and members of the Clearview Client Class further violated the CCPA by using the personal information they collected from Plaintiff and members of the California Subclass for undisclosed purposes without providing the requisite notice.

72.     The above-described conduct of Defendants and members of the Clearview Client Class constituted unfair practices in violation of the UCL because the practices and acts: (a) were immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff and members of the California Subclass; and (b) violated established public policy. These acts caused substantial injury to Plaintiff and members of the California Subclass; this substantial injury outweighed any benefits to competition or the purpose of such conduct, and there were reasonably available alternatives to further the legitimate business interests of Defendants and members of the Clearview Client Class.

73.     As a result of the UCL violations by Defendants and members of the Clearview Client Class, Plaintiff and members of the California Subclass have suffered an injury-in-fact and have lost money and property. Plaintiff and members of the

California Subclass are entitled to restitution and disgorgement, declaratory and other equitable relief.

74.     Moreover, Plaintiff and members of the California Subclass are entitled to injunctive relief. Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendants and members of the Clearview Client Class will continue to cause great and irreparable injury to Plaintiff and members of the California Subclass in that Defendants, members of the Clearview Client Class and others can continue to use the unlawfully obtained personal information to the detriment of Plaintiff and members of the California Subclass. Plaintiff and members of the California Subclass have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the alleged invasion of privacy.

## COUNT TWO
### VIOLATION OF CAL. CIV. CODE § 3344(A) – COMMERCIAL MISAPPROPRIATION
**(By Plaintiff, on Behalf of Herself and Members of the California Subclass, Against Defendants and Members of the Clearview Client Class)**

75.     Plaintiff restates and realleges paragraphs 1 through 61 of this Class Action Complaint as though fully set forth herein.

76.     California Civil Code § 3344(a) makes it unlawful for any person to knowingly "use another's . . . photograph [] or likeness, in any manner . . . without such person's prior consent . . . ." Cal. Civ. Code § 3344(a). Any person who violates § 3344(a) is liable to the injured party "in an amount equal to the greater of seven hundred

LOEVY & LOEVY
Attorneys at Law

fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing actual damages." *Id.*

77.     As alleged above, Plaintiff and members of the California Subclass posted images of their faces on the internet.

78.     In violation of § 3344(a), Defendants and members of the Clearview Client Class knowingly used photographs and the likenesses of Plaintiff and members of the California Subclass without obtaining their prior consent. Specifically, without providing notice to Plaintiff or members of the California Subclass, Defendants and members of the Clearview Client Class scraped the photographs of Plaintiff and members of the California Subclass from the internet, amassed the Biometric Database and/or used the Biometric Database for commercial gain.

79.     The use photographs and the likenesses of Plaintiff and members of the California Subclass by Defendants and members of the Clearview Client Class did not have any connection with the news, public affairs, sports broadcast or account, or any political campaign.

80.     In addition to the above-alleged bases for individual liability against Defendants Ton-That, Schwartz and Mulcaire, Defendants Ton-That, Schwartz and Mulcaire are personally liable for the intentionally tortious conduct alleged herein

LOEVY & LOEVY
Attorneys at Law

because they participated in that conduct, consented to it, directed it, authorized it and failed to preclude or otherwise prohibit it.

81.     As a result of the conduct of Defendants and members of the Clearview Client Class, Plaintiff and members of the California Subclass have been harmed and are entitled to their actual or statutory damages. Plaintiff and members of the California Subclass are also entitled to recover their costs and reasonable attorneys' fees pursuant to Cal. Civ. Code § 3344(a).

## COUNT THREE
**VIOLATION OF CALIFORNIA COMMON LAW – RIGHT OF PUBLICITY**
**(By Plaintiff, on Behalf of Herself and Members of the California Subclass, Against Defendants and Members of the Clearview Client Class)**

82.     Plaintiff restates and realleges paragraphs 1 through 61 of this Class Action Complaint as though fully set forth herein.

83.     California's common law right of publicity protects persons from unauthorized use of a person's identity by another for commercial gain.

84.     As alleged above, for commercial gain, Defendants and members of the Clearview Client Class knowingly used the identities, photographs and likenesses of Plaintiff and members of the California Subclass without authorization. Specifically, without authorization, Defendants and members of the Clearview Client Class scraped the photographs of Plaintiff and members of the California Subclass from the internet, amassed the Biometric Database consisting of the Biometrics of Plaintiff and members

LOEVY & LOEVY
Attorneys at Law

of the California Subclass, among others, and/or used the Biometric Database for commercial gain or to otherwise benefit themselves.

85.     The unlawful conduct of Defendants and members of the Clearview Client Class harmed Plaintiff and members of the California Subclass. Indeed, at no time has any Defendant or member of the Clearview Client Class compensated Plaintiff or members of the California Subclass for the use of their identities, photographs and likenesses.

86.     Use of the identities, photographs and likenesses of Plaintiff and members of the California Subclass was directly connected to the commercial activity of Defendants and members of the Clearview Client Class.

87.     The actions of Defendants and members of the Clearview Client Class were a substantial factor in causing harm to Plaintiff and members of the California Subclass.

88.     As a direct and proximate result of the misconduct of Defendants and members of the Clearview Client Class, Plaintiff and members of the California Subclass have suffered damage and are entitled to monetary damages in an amount to be determined at trial. Plaintiff and members of the California Subclass also seek injunctive relief and such other equitable or declaratory relief as may be appropriate.

CLASS ACTION COMPLAINT

**COUNT FOUR**
**CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY**
**(By Plaintiff, on Behalf of Herself and Members of the California Subclass,**
**Against Defendants and Members of the Clearview Client Class)**

89.    Plaintiff restates and realleges paragraphs 1 through 61 of this Class Action Complaint as though fully set forth herein.

90.    Plaintiff and members of the California Subclass had a reasonable expectation of privacy to their highly sensitive Biometrics and were entitled to protection of that sensitive information against the collection, obtainment, use and disclosure thereof by and to unauthorized parties. As such, Plaintiff and members of the California Subclass possessed a legally protected privacy interest. That privacy interest is reflected in several laws, including, as alleged above, the CCPA, California Civil Code § 3344(a) and California's common law right of publicity.

91.    Defendants and members of the Clearview Client Class intentionally and maliciously intruded upon the privacy rights of Plaintiff and members of the California Subclass by surreptitiously harvesting their highly sensitive Biometrics, amassing them into the Biometric Database, widely distributing and disseminating the Biometrics and/or using the Biometrics to learn personal information about, and the identities of, Plaintiff and members of the California Subclass. The intrusion upon the privacy rights of Plaintiff and members of the California Subclass by Defendants and members of the Clearview Client Class occurred in a manner highly offensive to a reasonable person,

LOEVY & LOEVY
Attorneys at Law

as a reasonable person would not expect an unknown and unauthorized party to harvest and use his or her Biometrics in the manner described herein.

92.    Moreover, as alleged above, the intrusion upon the privacy rights of Plaintiff and members of the California Subclass by Defendants and members of the Clearview Client Class was so serious as to constitute an egregious breach of social norms such that the breach was highly offensive.

93.    As a direct and proximate result of the unlawful invasion of the privacy of Plaintiff and members of the California Subclass by Defendants and members of the Clearview Client Class, the personal information of Plaintiff and members of the California Subclass has been disclosed to Defendants, members of the Clearview Client Class and countless others, and their reasonable expectations of privacy have been intruded upon and frustrated.

94.    Plaintiff and members of the California Subclass have suffered injuries as a result of the conduct alleged herein, and they are entitled to appropriate relief, including compensatory and punitive damages.

95.    Moreover, unless and until enjoined and restrained by order of this Court, wrongful conduct alleged herein will continue to cause great and irreparable injury to Plaintiff and members of the California Subclass in that Defendants, members of the Clearview Client Class and others can continue to use the unlawfully obtained personal information to the detriment of Plaintiff and members of the California Subclass.

Plaintiff and members of the California Subclass have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of their privacy or require Defendants or members of the Clearview Client Class to delete the personal information in their possession, custody and control or to retrieve that information from the unauthorized entities to which it was disclosed.

## COUNT FIVE
## UNJUST ENRICHMENT
**(By Plaintiff, on Behalf of Herself and Members of the Plaintiff Classes, Against Defendants and Members of the Clearview Client Class)**

96.     Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

97.     To the detriment of Plaintiff and members of the Plaintiff Classes, Defendants and members of the Clearview Client Class have been, and continue to be, unjustly enriched as a result of their wrongful conduct, as alleged herein.

98.     Plaintiff and members of the Plaintiff Classes conferred a benefit on Defendants and members of the Clearview Client Class in that, without authorization and through inequitable means, Defendants and members of the Clearview Client Class: (a) covertly scraped photographs of Plaintiff and members of the Plaintiff Classes from the internet; (b) collected, captured, purchased, received through trade and otherwise obtained and used the Biometrics of Plaintiff and members of the Plaintiff Classes; (c) amassed a Biometric Database containing those Biometrics; (d) distributed,

redistributed and disseminated the Biometric Database; and/or (e) sold, traded, leased and otherwise profited from the Biometric Database and Biometrics. Defendants and members of the Clearview Client Class did not compensate Plaintiff and members of the Plaintiff Classes for the benefit received from the above-described conduct.

99.   Defendants and members of the Clearview Client Class appreciated, accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from their conduct toward Plaintiff and members of the Plaintiff Classes, as alleged herein.

100.   Plaintiff and members of the Plaintiff Classes have no adequate remedy at law.

101.   Under the circumstances, it would be unjust and unfair for Defendants and members of the Clearview Client Class to be permitted to retain any of the benefits obtained from Plaintiff and members of the Plaintiff Classes.

102.   Under the principles of equity and good conscience, Defendants and members of the Clearview Client Class should not be permitted to retain the photographs, biometric identifiers and information belonging to Plaintiff and members of the Plaintiff Classes because Defendants and members of the Clearview Client Class unlawfully obtained that information.

103.   Defendants and members of the Clearview Client Class should be compelled to disgorge into a common fund or constructive trust, for the benefit of

Plaintiff and members of the Plaintiff Classes, proceeds that they unjustly received from the sale, lease, trade, distribution, dissemination and use of the personal information of Plaintiff and members of the Plaintiff Classes.

## COUNT SIX
## DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, *et seq.*
**(By Plaintiff, on Behalf of Herself and Members of the Plaintiff Classes, Against Defendants and Members of the Clearview Client Class)**

104.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

105.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Further, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the statutes described in this Class Action Complaint.

106.   An actual controversy has arisen in the wake of the unlawful collection, obtainment, purchase, trade, disclosure, dissemination, sale and/or misuse by Defendants and members of the Clearview Client Class of the photographs and Biometrics of Plaintiff and members of the Plaintiff Classes without their consent, as alleged herein, in violation of the common law and statutory duties of Defendants and Members of the Clearview Client Class.

107.    Plaintiff and members of the Plaintiff Classes continue to suffer injury and damages, as described herein, as Defendants and members of the Clearview Client Class continue to collect, obtain, purchase, trade, disclose, sell and/or misuse the photographs and Biometrics of Plaintiff and members of the Plaintiff Classes.

108.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendants and members of the Clearview Client Class continue to owe a legal duty to not collect, obtain, purchase, trade, disclose, sell or otherwise misuse the photographs and Biometrics of Plaintiff and members of the Plaintiff Classes under, *inter alia*, the statutory provisions described in this Consolidated Class Action Complaint and the common law;

b.    Defendants and members of the Clearview Client Class continue to breach their legal duties to Plaintiff and members of the Classes by continuing to collect, obtain, purchase, trade, disclose, sell and otherwise misuse the photographs and Biometrics of Plaintiff and members of the Plaintiff Classes; and

c.    The ongoing breaches by Defendants and members of the Clearview Client Class of their legal duties continue to cause harm to Plaintiff and members of the Plaintiff Classes.

109.    The Court should also issue corresponding injunctive relief, including, but not limited to: (a) enjoining Defendants and members of the Clearview Client Class from engaging in the unlawful conduct alleged in this claim; (b) requiring Defendants and members of the Clearview Client Class to delete all photographs and Biometrics of Plaintiff and members of the Plaintiff Classes; and (c) cease further collection of photographs and Biometrics of Plaintiff or members of the Plaintiff Classes or engaging in any activities that would result in the purchase, obtainment, disclosure, trade, sale or misuse of the photographs and Biometrics of Plaintiff and members of the Plaintiff Classes. If an injunction is not issued, Plaintiff and members of the Plaintiff Classes will suffer irreparable injury and lack an adequate legal remedy in the event the statutory or common law does not prohibit, among other things, the collection, purchase, obtainment, trade,  disclosure, sale and misuse of the photographs and Biometrics of Plaintiff and members of the Plaintiff Classes. The California constitution, California statutory law and California common law, in particular, grant California residents protection from invasions of privacy and unfair business practices, rights Defendant and members of the Clearview Client Class violated here. In light of the pervasive flaunting of such rights by Defendants and members of the Clearview Client Class, including the continued collection, purchase, obtainment, trade, disclosure, sale and/or misuse of the photographs and Biometrics of Plaintiff and members of the Plaintiff Classes, the risk of continued violations of the law is real,

immediate and substantial. Plaintiff and members of the Plaintiff Classes do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiff and members of the Plaintiff Classes will be forced to bring multiple lawsuits to rectify the same conduct.

110.   The hardship to Plaintiff and members of the Plaintiff Classes if an injunction is not issued exceeds the hardship to Defendants and members of the Clearview Client Class if an injunction is issued. On the other hand, the cost to Defendants and members of the Clearview Client Class of complying with an injunction by adhering to the requirements of California law and the common law more broadly by ceasing to engage in the misconduct alleged herein is relatively minimal, and Defendants and members of the Clearview Client Class have a pre-existing legal obligation to avoid invading the privacy rights of consumers.

111.   Issuance of the requested injunction will serve the public interest by preventing ongoing collection, purchase, obtainment, trade, disclosure, sale and misuse of the photographs and Biometrics of Plaintiff and members of the Plaintiff Classes without consent, thus eliminating the injuries that would result to Plaintiff and members of the Plaintiff Classes, and the hundreds of millions of Americans who upload photographs to social media sites.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Plaintiff Classes, respectfully requests that the Court:

a.   Certify the Plaintiff Classes, name Plaintiff as the representative of the Plaintiff Classes and appoint her lawyers as counsel for the Plaintiff Classes;

b.   Certify the Clearview Client Class;

c.   Award Plaintiff and the members of the Plaintiff Classes statutory, compensatory, punitive, exemplary, consequential, general and nominal damages in an amount to be determined at trial;

d.   Grant permanent injunctive relief to prohibit Defendants and members of the Clearview Client Class from continuing to engage in the unlawful acts and practices described herein;

e.   Award Plaintiff and members of the proposed Classes pre-judgment and post-judgment interest as permitted by law;

f.   Award to Plaintiff and members of the Plaintiff Classes the costs and disbursements of the action, along with reasonable attorneys' fees, costs and expenses; and

g.   Grant all such other relief as it deems just and proper.

1

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  May 25, 2021

Respectfully submitted,

By:  /s/ Megan Pierce
MEGAN PIERCE
*One of Plaintiff's Attorneys*

Megan Pierce (SBN 314044)
megan@loevy.com
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900 (phone)
312.243.5902 (fax)
*Counsel for Plaintiff*